## Commonwealth v. Colbert

*LeRoy S. Maxwell*, District Attorney, for Commonwealth.

*A. J. White Hutton,* for defendant.

WINGERD, P. J., June 20, 1947.—Lewis H. Colbert, a colored resident of Chambersburg, Franklin County, Pa., who resides at one location and runs a pool room at another, plead guilty on January 27, 1947, to an indictment charging him with being "unlawfully concerned in the managing, conducting and carrying on of an illegal lottery, namely, a numbers lottery".

On January 7, 1947, State policemen, armed with a search warrant, made a search of Colbert's home and seized, as shown on sworn return of officer, dated January 8, 1947, unused writing pads; a cigar box containing numbers returns, tally sheet and $6.36 in cash; an envelope containing a number play and 40 cents in cash; a Burroughs adding machine; and a green metal box containing $306.30 in cash and several dated slips purporting to show day's receipts of numbers lottery.

On February 7, 1947, Colbert presented his petition to this court asking that a rule issue on the State officer making the return and the district attorney, to show cause why a savings bond, the sum of $306.30, together with the green metal box and private papers contained therein should not be delivered to petitioner. A responsive answer was filed to the rule which raised questions of fact and, at a later date, testimony was presented by petitioner and respondent before the court in support of their respective allegations.

Petitioner testified that the money in the green metal box belonged to him and his son and was not used in or connected in any way with the numbers lottery but that the money contents were the proceeds of two $50 Christmas savings funds, one his and one his son's; money earned by his son selling newspapers, which included six silver dollars given to his son at Christmas by patrons; money saved to pay support of a daughter in an institution; money to pay rent of and supplies for the pool room and to cash checks for customers. Another metal box containing about $100 was in the home but there was nothing to connect it with the numbers lottery and the officers did not take it. Colbert stated that he carried this box with him to and from the pool room. The green metal box was found in a locked trunk in the bedroom on the second floor of Colbert's home and in the trunk were also a large number of pads, such as used in a numbers lottery, and some

clothes. The officers testified that they found in the green metal box number slips for January 5, 6, 8 and 9, 1943, and a slip for the play for January 6, 1947. The slip for the play for January 6, 1947, was identified by Colbert but he stated it was in the cigar box and that the 1943 slips had always been in the cigar box. Colbert also said he had a small checking account in a bank but had not used it recently and further admitted that his cut or compensation was one fourth of the gross collections made by him for the lottery, such collections averaging about $30 to $50 per day. The United States Savings Bond, face value $25, was found by the district attorney among some papers in the bottom of the green metal box after the seizure and return thereof.

At the hearing, by agreement of all parties, the savings bond was returned to petitioner and the adding machine was also returned to his possession as the property of one Daniel S. Culp, the bailor. The issue before the court concerns the green metal box and its money contents.

In Pennsylvania the law seems very clear that money can be seized when an integral part of an illegal gambling operation. In the present case, we have an illegal gambling operation and the money seized was found under circumstances which strongly indicate that it was connected in some way with the illegal gambling operation.

This court finds that the money was found in a green metal box, which was in a locked trunk with a large number of pads used in the numbers lottery; that the trunk was in the home of petitioner from which he carried on his part in the numbers lottery, namely, that of collector or middleman between those who risked their money and the representative of the lottery itself, with whom he made settlements daily, that is, on the same day the money was paid to him he

paid it, less his cut, to the representative; that in the green metal box was $306.30 in cash, daily report sheets for January 5, 6, 8 and 9, 1943, showing collections for the lottery for those days and one for January 6, 1947, showing collections for that day, the day prior to the seizure; and that the box also contained some personal papers and a United States Savings Bond belonging to petitioner.

The question to determine is whether or not all or any of the money in the green metal box was, at the time of seizure, an integral part of the illegal gambling transaction. The evidence must be such that, from it, it can reasonably be found that all or some of the money seized was at the time of seizure an integral part of a gambling transaction: Fairmount Engine Co. v. Montgomery County, 135 Pa. Superior Ct. 367, 376.

The circumstances under which money is an integral part of a gambling transaction and as such the subject of seizure by the Commonwealth is very clearly set forth in Rosen v. Supt. of Police Le Strange et al., 120 Pa. Superior Ct. 59, 61 and 62, by the late President Judge Keller, as follows:

"Money is not, ordinarily, itself, an instrumentality of gambling. It may be, as when men gamble on the toss of a coin. But usually it is the stake or profit of gambling, not an instrumentality, device or apparatus for gambling. Cards, dice, roulette wheels, slot machines, punch boards, certain kinds of boards or tables, lottery tickets, policy slips, 'numbers' books and slips are among the common forms of gambling devices and apparatus.

"Money may, nevertheless, be subject to seizure, along with *contraband* gambling devices, apparatus or instrumentalities, (Com. v. Sinn, 82 Pa. Superior Ct. 482, 484; Com. v. Kaiser, 80 Pa. Superior Ct. 26, 28) when the circumstances are such that it is clearly

apparent that it formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. Thus money found in a gambling slot machine, when seized, may be held with the machine and be confiscated by the Commonwealth; for while it had passed out of the ownership of the players, who inserted it in the machine, it had not been reduced to the possession and ownership of the proprietor; he does not become the owner of the money while it is contained in a receptable within the illegal and contraband gambling machine. So money found lying on a roulette wheel, or rouge et noir table, when the gambling device is seized, if so commingled that its prior ownership has been lost, may, in like manner, be subject to confiscation, Com. v. Sinn, supra, p. 484. Money received for lottery tickets and 'policy' slips and from playing 'numbers', and held awaiting the drawing of the lottery, or the determination of the winning number, if earmarked or segregated so as to be identified as part of the gambling operation, may likewise be confiscated as contraband by the authorities along with the gambling instrumentality: Appeal of Joe Curcio, 106 Pa. Superior Ct. 53, 161 A. 627."

This is quoted with approval in Fairmount Engine Co. v. Montgomery County, supra.

Let us apply the law above stated to the facts of the present case. The slips found in the green metal box could not identify money still involved in the numbers play, for all, except one, were for a prior year and the other was for the day before the seizure and the money collected, shown on it, would have been paid over to the representative of the lottery, less petitioner's share, on the day preceding the seizure. The collections made

for the day of the seizure up to the time of the seizure were $6.36 found in the cigar box and 40 cents in an envelope. This small amount of money was plainly an integral part of the gambling transaction when seized and no question is raised concerning it. The money in the green metal box may very well have been money which had been collected in the numbers game and paid over to the petitioner as his share of gross collections. At the rate of $7.50 to $12.50 per day, it would take about a month to collect the amount in the metal box. The box contained personal papers and a Government bond, which were not connected with the lottery. Even though all or a large part of the money in the box was derived from the operation of the lottery as petitioner's compensation, it was not, at the time of the seizure, an integral part of the gambling transaction for it had been reduced to the exclusive ownership of petitioner. Although the explanation of petitioner and his son as to the source of the money found in the green metal box was not impressive, nevertheless, even though we eliminate their testimony from consideration so far as it concerns the sources of the money in the box, there is not sufficient evidence in the case to support the conclusion that the money in the green metal box was, at the time of the seizure, a part of the gambling transaction then in process, that is, an integral part thereof. The money in the box, so far as the evidence shows, was not money collected from players commingled and waiting to be delivered to the operator, nor was it money, which constituted prizes to be paid to winning players, still in the possession of the representative of the lottery. If it had been connected with the lottery in any way it had lost its identity as such and had become the property of an individual. Under these circumstances it was not subject to seizure as part of a gambling transaction and must be returned to the petitioner.

Now, June 20, 1947, rule absolute.